IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAINE STUART | : | Civ. No. 4:13-CV-00303 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| UDREN LAW OFFICES P.C., *et al.* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
June 9, 2014

The Defendant, Udren Law Offices P.C.,[1] filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule Civil Procedure 12(b)(6). Plaintiff's Complaint, filed February 7, 2013, seeks redress for Defendant's alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). The Court exercises jurisdiction pursuant to 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

For the reasons discussed, the Defendant's Motion to Dismiss is granted and the Plaintiff's Complaint is dismissed with prejudice.

**I.    BACKGROUND**

Defendant, Udren Law Offices P.C. ("Udren" or "Defendant"), is a law firm

---

[1] The Complaint also names "John Does 1-10" and "XYZ Corporations" as Defendants.

that represents various mortgage lenders in federal and state court proceedings in Pennsylvania, New Jersey, and Florida. Plaintiff, Elaine Stuart ("Stuart" or "Plaintiff"), is an adult individual who was subject to a mortgage held by HSBC Mortgage Services Inc. ("HSBC").

On or about March 16, 2012, Udren, on behalf of its client HSBC, mailed Stuart a "Payoff Statement" detailing an alleged debt Plaintiff owed HSBC. Pl.'s Compl. ¶ 17, Ex. A, Feb. 7, 2013, ECF No. 1[hereinafter Pl.'s Compl.]. The Payoff Statement read, in pertinent part: "Dear Elaine Stuart: As requested, enclosed please find payoff form, indicating the sum needed to payoff the referenced mortgage." Id. The attached "payoff form" then detailed the principal balance of the loan, accrued interest, and several other fees, including attorneys fees, all totaling $139,793.65. Many of the additional fee amounts were marked "(Anticipated)." The letter stated that those items marked "(Anticipated)" were "not yet due, but may become due during the time period set forth in this statement." Id.

Plaintiff alleges that Udren's letter was an "initial communication" debt collection letter subject to the pertinent provisions of the FDCPA. Pl.'s Compl., ¶ 21. Plaintiff's Complaint alleges two counts: that Udren violated 15 U.S.C. § 1692g by failing to send a validation notice within five (5) days of the alleged

initial communication; and, that the items marked "(Anticipated)" were false and misleading in violation of 15 U.S.C. § 1692e-f; 41 P.S. § 406. Udren then filed this Motion to Dismiss Plaintiff's claims.

## II. DISCUSSION

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 662. The goal behind the standard is to weed out those claims that do not present "enough" factual matter, assumed to be true, "to raise a reasonable expectation that discovery will reveal evidence" in support of the claims. Twombly, 550 U.S. at 556. Where a plaintiff fails to nudge her "claims across the line from conceivable to plausible, [her] complaint must be dismissed." Id. at 570.

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the

factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 556 U.S. at 678-79]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id. at 679].

Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

> B. Stuart's Complaint Fails to State a Claim Under the FDCPA
>
> 1. *Udren's Response to Consumer-Initiated Communication Is Not an Initial Communication Under the FDCPA*

The stated purpose of the Federal Debt Collection Practices Act is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" Zimmerman v. HBO Affiliate Grp., 834 F.2d 1163, 1167 (3d Cir. 1987); see also Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000). In order to state a claim under the FDCPA, a plaintiff must allege a communication by a defendant in furtherance of the collection of a debt. Accord Mabe v. GC Servs. Ltd. P'ship, 32 F.3d 86, 87-88 (4th Cir. 1994).

In Count One of the Complaint, Stuart contends that Udren violated the

4

FDCPA by failing to satisfy requirements contained in 15 U.S.C. § 1692g. The statute provides that: "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" a list of particular information pertaining to the debt.[2] 15 U.S.C. § 1692g(a). Stuart alleges that the letter sent by Udren was an "initial communication" under the statute that did not contain all required information, nor was a follow-up communication sent within the five days as required. Consequently, Stuart alleges

---

[2] The information required by the statute includes:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Udren violated the FDCPA.

Udren contends that the communication it sent to Stuart was not an initial communication in furtherance of debt collection such that the FDCPA applies. Def.'s Br. Supp. Mot. Dismiss 5–6, May 17, 2013, ECF No. 9 [hereinafter Def.'s Br. Supp.]. Rather, Udren asserts the communication at issue was a letter sent in response to Stuart's inquiry about the debt—a consumer-initiated communication that was not in furtherance of debt collection activity that cannot be the basis of an FDCPA claim.

The statute itself does not define what constitutes an "initial communication." Courts confronting this issue have distinguished between collection letters initiated by a debt collector and responses sent from the debt collector to the consumer after the consumer requested information—many courts have found that the former constitute initial communication whereas the latter do not.

For example, in Gorham-DiMaggio v. Countrywide Home Loans, Inc., 1:05-cv-0583, 2005 WL 2098068, *2–3 (N.D.N.Y. Aug. 30, 2005), the United States District Court for the Northern District of New York granted the defendant's motion to dismiss the plaintiff's complaint because the response to consumer initiated conversation did not constitute an "initial communication" in furtherance

of debt collection activity. In that case, the court construed the phrase "initial communication" in the context of 15 U.S.C. § 1692e(11), another section of FDCPA that also contains the term. The court stated:

> Upon reviewing a large selection of cases discussing § 1692e(11), it appears that the purpose of §1692 is to ensure that communications *initiated by the debt collector* (not the consumer) are not abusive, deceptive, or unfair . . . . Although the Court, admittedly, has not reviewed every FDCPA case in the country, it has reviewed a large amount of such cases and has not found a single case where a communication instituted by the consumer implicated § 1692e. Indeed, when the consumer initiates the communications, many of the policy reasons behind the FDCPA disappear.

Gorham-Dimaggio v. Countrywide Home Loans, Inc., 1:05-cv-0583, 2005 WL 2098068, *2 (N.D.N.Y. Aug. 30, 2005) (internal citations omitted). That court also noted in a footnote that the "Court was unable to find (and Plaintiff [had] not identified) any cases discussing a situation where a communication initiated by the consumer implicated the FDCPA." Id. at *2 n.1.

Similarly, in Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 311, 329–31 (D. Conn. 2012), the United States District Court for the District of Connecticut held, *inter alia*, that the defendant did not violate 15 U.S.C. § 1692g by failing to provide the requisite information because the plaintiff initiated the communication. The court elaborated at length on this issue, writing:

> Courts in this circuit have held that the "FDCPA's protections are not triggered by communications initiated by someone other than the debt

collector." Boyd v. J.E. Robert Co., No. 05-CV-2455(KAM)(RER), 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010) (FDCPA did not apply where defendants were simply responding to inquiries made by plaintiffs concerning the outstanding amount then due and owing on plaintiff's account) . . . Nichols v. Washington Mut. Bank, No. 07-cv-3216, 2007 WL 4198252, at *4–5 (E.D.N.Y. Nov. 21, 2007) (holding that "FDCPA was inteded to protect consumers from communications initiated by debt collectors, not consumers.").

. . .

To permit a consumer to unilaterally trigger a debt collector's duty to validate the debt would unduly burden and potentially frustrate a valid debt collection process . . . .

This Court agrees that the FDCPA's purpose in preventing deceptive or harassing actions taken by a debt collector is simply not furthered by imposing 1692g's obligations on a debt collector where the consumer voluntarily initiates the communication to inquire how to bring a debt current . . . . [M]any of policy reasons [sic] behind the FDCPA are not implicated where a communication is initiated by a plaintiff and not in connection with the collection of a debt as was the case here.

Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 311, 330–31 (D. Conn. 2012).[3] Furthermore, the letter at issue in the case stated plainly on its face that it

---

[3] There exist additional case examples articulating similar principles. See, e.g., Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) ("The FDCPA was passed to protect consumers from deceptive or harassing actions *taken by debt collectors*.") (emphasis added); Blair v. Bank of Am., N.A., 10-CV-946-SI, 2012 WL 860411, *11 (D. Or. Mar. 13, 2012) ("The phrase 'initial communication with a consumer,' followed by the requirements imposed on the debt collector for such an initial communication, suggests that the statute properly understood refers to and requires a communication that is initiated by the debt collector, not a communication initiated by the consumer.") aff'd sub nom. Blair v. Bank of Am., NA, 12-35902, 2014 WL 2069287 (9th Cir. May 20, 2014); Grambart v. Global Payments Check Recovery Servs., Inc., No. 10-cv-4399, 2011 WL 124230, *2 (D. Minn. Jan. 14, 2011) ("Such communication, initiated by the debtor, is not covered by the FDCPA.").

was sent in response to the plaintiff's request.  See id.

In the case *sub judice*, the letter attached to Plaintiff's Complaint as an Exhibit that is the subject of this action states on its face: "Dear Elaine Stuart: *As requested*, enclosed please find payoff form indicating the sum needed to payoff the referenced mortgage."  Pl.'s Compl., Ex. A (emphasis added); see also Steinhardt Grp. Inc. v. Citicorp., 126 F.3d 144, 145 n.1 (3d Cir. 1997) (noting the district court properly considered copies of letters, including a mortgage loan document, attached to the parties' submissions).  Moreover, the Plaintiff does not dispute the fact that the letter Udren sent "was a response to a query of the Plaintiff." Pl.'s Br. Opp'n 6, May 28, 2013, ECF No. 10 [hereinafter Pl.'s Br. Opp'n].

Therefore, even considering the facts in the light most favorable to the Plaintiff as required at this juncture, Plaintiff's Complaint fails to state a claim under 15 U.S.C. § 1692g, because language of the statute, its purpose, and the manifest weight of the case law all indicate that consumer-initiated communications are not subject to this provision.  Udren's response to Stuart was not an "initial communication," the requirements of § 1692g do not apply, and,

accordingly, Count One of Stuart's Complaint is dismissed with prejudice.[4]

### 2. *Pennsylvania's Act 6 Does Not Apply to Udren*

Count Two[5] of Plaintiff's Complaint attempts to assert a FDCPA claim derivative of Udren's alleged violation of 41 P.S. § 101, *et seq.*, a provision of Pennsylvania's Loan Interest and Protection Act ("Act 6") concerning attorney's fees payable. The relevant portion the statute provides:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
>
> . . .
>
> (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.
>
> (3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

---

[4] The Parties also briefed a contentious issue of statutory interpretation concerning whether or not an enforcer of a security interest is subject to all the requirements of the FDCPA or only select provisions. See Def.'s Br. Supp., at 10–12. Because Stuart's Complaint fails to plausibly state a claim due to other deficiencies, the Court does not reach this issue.

[5] For purposes of clarity, both counts are labeled "Count One" in the actual Complaint. The Court numbers the counts one and two, according to their chronological presentation in the Complaint.

41 P.S. § 406.

Stuart claims that Udren violated subsection (3) of the statute because the letter at issue "was sent prior to the commencement of any foreclosure action" and "stated or implied that more than $50 in attorney fees was due at the time that said letter was sent." Pl.'s Compl., ¶¶ 34–35. Although not artfully pled, the Court believes that based on this allegation Stuart further alleges that Udren's letter provides a derivative claim under several provisions of the FDCPA including: 15 U.S.C. § 1692e for false and misleading representations; and, 15 U.S.C. § 1692f for, *inter alia*, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(a); Pl.'s Compl. ¶¶ 38–40. Essentially, Stuart is relying on Act 6 to supply the standard it alleges Udren violated for the derivative claims under the FDCPA. Stated otherwise, Stuart alleges that the limitations of Act 6 applied to Udren, and Udren's letter stating that it anticipated attorney's fees over $50 would be due was a misleading communication and false representation of a debt due in violation of the FDCPA.

The law is clear, however, that section 406 of Pennsylvania's Act 6 applies

only to "residential mortgage lenders," which Udren is not.[6]  In Glover v. Udren Law Offices, P.C., 2014 PA Super 82, — A.3d — (Pa. Super. Ct. Apr. 23, 2014), the Superior Court of Pennsylvania recently addressed this issue with respect to the very same Defendant.  Addressing the plaintiff's argument that section 406 applied to Udren, the Court stated that

> [W]e must reject [plaintiff's] argument.  To do otherwise would require us to rewrite section 406 and the conduct proscribed by it.  By using the specific term "residential mortgage lender" in section 406, the Legislature has expressed its intention to control the conduct of residential mortgage lenders as defined under Act 6 when the residential mortgage lenders contract for attorney's fees and receive those fees from borrowers.  The use of this term makes clear that only residential mortgage lenders can commit a violation of section 406 by contracting for or receiving fees in excess of those specified therein.  As Udren is not a residential mortgage lender, it cannot violate section 406.

Glover v. Udren Law Offices, P.C., 2014 PA Super 82, — A.3d —, 2014 WL 1622100, *4 (Pa. Super. Ct. Apr. 23, 2014).

Udren is not a residential mortgage lender and is accordingly not subject to section 406.  Therefore, no FDCPA violation can lie against Udren for a purported violation of this provision as a matter of law.  The plaintiff makes no allegation that the amounts anticipated to become due were in violation of any other

---

[6] The statute defines a residential mortgage lender as "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt.  The term also includes the holder at any time of a residential mortgage obligation." 41 P.S. § 101.

governing standard (besides the inapplicable Act 6) or unauthorized by any agreements between the parties. Accordingly, Stuart fails to state a plausible claim that it is entitled to relief under the FDCPA in Count Two.

       3.    *Udren's Letter Is Not False or Misleading Under Least Sophisticated Debtor Standard*

Even if the relevant provisions of the FDCPA do apply to Udren's letter despite the fact that 41 P.S. § 406 is inapplicable to Udren, the letter is not false or misleading on its face. Courts examining alleged FDCPA violations apply the "least sophisticated debtor standard," which the United States Court of Appeals for the Third Circuit explained:

> "'The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied to consumer protection law.'" . . . [T]he 'least sophisticated debtor standard' is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" . . . In other words, "[t]his standard is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor." Nevertheless, "the standard does not go so far as to provide solace to the willfully blind or non-observant." The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. For example, even the "least sophisticated debtor" is expected to read any notice in its entirety.

Capiro v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 149 (3d Cir. 2013) (internal citations omitted). Furthermore, "whether the least sophisticated

debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion." <u>Smith v. Lyons, Doughty & Veldhuius, P.C.</u>, CIV.A. 07-5139, 2008 WL 2885887, *3 (D.N.J. July 23, 2008) (citing <u>Wilson v. Quadramed Corp.</u>, 225 F.3d 350, 353 n.2 (3d Cir. 2000)).

For example, in <u>Kaymark v. Bank of America, N.A.</u>, 13-CV-0419, — F. Supp. 2d —, 2014 WL 1316120, *15–16 (W.D. Pa. Mar. 31, 2014), the court adopted a magistrate judge's recommendation to dismiss plaintiff's claim because the inclusion of anticipated attorneys' fees not yet incurred on a mortgage foreclosure complaint sent to the debtor did not render the document false, misleading, or deceptive under the FDCPA. In that case, the plaintiff alleged the "as-yet-to-be-incurred" fees listed on the document violated sections 1692e–f of the FDCPA for, *inter alia*, attempting to collect unlawful attorneys fees and costs because they were not authorized and for the "use of false representation or deceptive means to collect a debt." <u>Kaymark v. Bank of Am., N.A.</u>, 13-CV-0419, — F. Supp. 2d —, 2014 WL 1316120, *15 (W.D. Pa. Mar. 31, 2014) (internal quotations omitted). Here, the magistrate judge found that the loan documents authorized reasonable attorneys' fees and costs, and the defendant violated no other

law with respect to the fees.[7]  Id.  Furthermore, the court found "that the least sophisticated debtor would not have been misled or deceived by the fixed fees and costs itemized in the Foreclosure Complaint, but would have understood them to be items included in the total amount claimed due and owing if [defendant] is successful in its lawsuit," because the items were clearly marked and itemized as not yet due.  Id. at *16.

Similarly, in the case before the Court, the letter in question is not misleading under the least sophisticated debtor standard.  The disputed charges not yet due at the time the letter was sent were clearly marked and delineated "Anticipated."  Pl.'s Compl., Ex A.  Directly underneath the accounting of the debt, the letter read:

> **ANY ITEM MARKED "ANTICIPATED", IS NOT YET DUE, BUT MAY BECOME DUE DURING THE TIME PERIOD SET FORTH IN THIS STATEMENT.  BEFORE SENDING IN FUNDS, PLEASE CALL US AT 215-568-9500 TO CONFIRM WHETHER THESE AMOUNTS HAVE BECOME DUE.**

---

[7] On this point, the district court wrote:

Plaintiff's contention that the inclusion of unincurred (but authorized) fees involves the "use of false representation or deceptive means to collect a debt or debts" in violation of the FDCPA is unavailing.  As reasoned by the Magistrate Judge, nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs in a foreclosure complaint even if they have not actually been incurred at the time of the filing of the complaint, but are reasonably expected to be incurred.

Kaymark, 2014 WL 1316120, at *2.

**ATTORNEY FEES ARE SUBJECT TO ADJUSTMENT PURSUANT TO PENNSYLVANIA ACT 6, IF APPLICABLE.**

Pl.'s Compl., Ex. A (emphasis in original).

Udren could not more clearly state that the items marked "Anticipated" were not yet due. The least sophisticated debtor "held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care" would understand this single rational reading of the letter. Capiro, 709 F.3d at 149. A reading to the contrary would be a "bizarre or idiosyncratic interpretation[]." Id. Consequently, even if the FDCPA applied to the letter, Stuart has alleged no legal basis for precluding the collection of these anticipated amounts and those amounts were clearly delineated as not yet due on the face of the letter.

### III. CONCLUSION

Stuart's Complaint does not state a claim for relief. Count One fails because debtor-initiated communications are not subject to the pertinent FDCPA provisions. Count Two fails because Act 6 does not apply to Udren and the letter was not misleading under the least sophisticated debtor standard. Accordingly, Udren's Motion to Dismiss is granted and Stuart's Complaint is dismissed with prejudice.

An appropriate Order follows.

                              BY THE COURT:

                              <u>s/ Matthew W. Brann</u>
                              Matthew W. Brann
                              United States District Judge